UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| **TEKMART INTEGRATED MANUFACTURING SERVICES LTD.,** § § § | |
| *Plaintiff,* § | |
| v. § | **EP-23-CV-00081-DCG** |
| § | |
| **THE POWER-SONIC CORPORATION,** § § | |
| *Defendant.* § | |

**MEMORANDUM OPINION AND ORDER**
**DISMISSING CASE FOR LACK OF PERSONAL JURISDICTION**

Defendant The Power-Sonic Corporation moves to dismiss Plaintiff Tekmart Integrated Manufacturing Services, Ltd.'s Complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). Mot., ECF No. 6; Reply, ECF No. 9; *see also* FED. R. CIV. P. 12(b)(2). Tekmart is opposed. Resp., ECF No. 7. The Court **GRANTS** Power-Sonic's Motion.

### I. BACKGROUND[1]

Plaintiff Tekmart is suing Defendant Power-Sonic for breach of contract.[2] Tekmart is an international corporation organized under the laws of Hong Kong, China, with its principal place of business in Ciudad Juárez, México.[3] Tekmart is a manufacturing company that provides contract molding services, decorative finishing, assembly, and subassembly.[4]

---

[1] Unless otherwise noted, the Court adapts the following facts from the well-pleaded allegations in Tekmart's Complaint and construes them in the light most favorable to Tekmart. *See, e.g.*, *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014).

[2] Compl. ¶¶ 16–18.

[3] *Id.* ¶ 1.

[4] *Id.* ¶ 6.

Power-Sonic is incorporated in Nevada, with its principal place of business in San Diego, California.[5]  Power-Sonic designs, manufactures, and supplies a range of battery products, including technologies, chargers, and related accessories.[6]

In July 2021, representatives from Tekmart and Power-Sonic met in El Paso, Texas to discuss Tekmart's potential purchase of Power-Sonic assets located in Tijuana, México.[7]  In February 2022, the parties again met in Texas to discuss the same.[8]  Tekmart does not allege any other facts related to the parties' discussions about Tekmart's potential purchase of Power-Sonic's Tijuana assets.[9]

Instead, Tekmart alleges that the July 2021 and February 2022 meetings culminated in a different contract, which the parties executed in March 2022, under which Power-Sonic agreed to purchase custom injection plastic parts from Tekmart.[10]  The contract also required Power-

---

[5] *Id.* ¶ 2; *see also* Mot. at 3–4.  <u>Note</u>: Page citations in this Memorandum Opinion and Order refer to page numbers assigned by the Court's CM/ECF system, not the document's internal pagination.

[6] *See* Compl. ¶ 7; *see also* Screenshot Power-Sonic "About Us" Webpage, Ex. 2 Myers Unsworn Decl., ECF No. 7-2, at 2–4.

[7] Compl. ¶ 8.

[8] *Id.* ¶ 9.

[9] *See generally* Compl.; Resp. at 2, 5 (generally repeating allegations in its Complaint); *see also* Mot. at 1 (describing Tekmart's allegations about the July 2021 and February 2022 in-person Texas meetings, then saying that "the parties allegedly entered a separate agreement for Plaintiff to produce certain goods for Power-Sonic").

[10] Compl. ¶¶ 6–10.  It is not clear from Tekmart's Complaint what connection, if any, there is between the July 2021 and February 2022 Texas meetings and the contract the parties ultimately executed and is the subject of this lawsuit.  Tekmart alleges that the parties met in El Paso, Texas to discuss an agreement that appears to be entirely different from the one at issue in this case.  *Compare id.* ¶¶ 8–9 (discussing proposed plan for Tekmart to purchase Power-Sonic assets), *with id.* ¶ 10 (discussing contract under which Power-Sonic would purchase goods from Tekmart).  Power-Sonic points this discrepancy out in its Motion.  *See* Mot. at 1 (referring to the disputed contract as a "separate agreement" from the one discussed in El Paso in July 2021 and February 2022).  Tekmart does not directly address Power-Sonic's version of the facts in its Response; it instead opts to repeat—with a slight change—the allegation that the July 2021 and February 2022 (and, this time, an August 2022) meeting led to the disputed contract.  *See*

Sonic to deliver tooling to Tekmart for the production of the goods, and pay Tekmart's employees overtime wages so that Tekmart could run production outside of normal business hours.[11]

Power-Sonic allegedly became delinquent on payments it owed under the contract.[12] In attempt to resolve Power-Sonic's alleged delinquency, the parties met four times in August 2022: once in person in Texas and three times over videoconference.[13] Tekmart's Finance Controller, Ron Myers, who lives in El Paso, Texas, participated in the videoconference meetings.[14] As Tekmart's Finance Controller, Mr. Myers was responsible for processing Power-Sonic's payments and communicating with Power-Sonic regarding nonpayment.[15] The parties did not resolve their disagreement and Tekmart sued Power-Sonic in the Western District of Texas's El Paso Division.[16] Which brings us to where we are now: Power-Sonic's Motion to Dismiss Tekmart's Complaint for lack of personal jurisdiction.[17]

---

Resp. at 5.  The Court does not resolve this factual dispute.  Rather, it assumes, for this Opinion only, that Tekmart's version of the facts is true.  *See Ritter*, 768 F.3d at 431.

[11] Compl. ¶ 10.

[12] *Id.* ¶ 11.  In its Response, Tekmart says that Power-Sonic notified Tekmart's Controller, who lives in El Paso, Texas, of its intent to breach the contract.  Resp. at 6; *see also* E-Mail Communications, Ex. 1 Myers Unsworn Decl., ECF No. 7-1, at 4–16.

[13] Compl. ¶¶ 11–12.

[14] *Id.* ¶ 12; *see also* Myers Unsworn Decl., ECF No. 7-1 ¶ 3 ("I reside and work in El Paso, Texas.").

[15] Myers Unsworn Decl. ¶ 2; E-Mail Communications at 4–16.

[16] *See generally* Compl.

[17] *See generally* Mot.

## II.  DISCUSSION

### A. Legal Standard

"[T]he party asserting personal jurisdiction"—here, Tekmart—"has the burden to prove it exists." *Bulkley & Assocs., LLC v. Dep't of Indus. Rels., Div. of Occupational Safety & Health of the State of Cal.*, 1 F.4th 346, 350 (5th Cir. 2021).  While Tekmart must ultimately show by a preponderance of the evidence that the Court has personal jurisdiction over Power-Sonic, it need not do so yet.  *See Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008).  Rather, because the Court has not held an evidentiary hearing on Power-Sonic's challenge to the Court's exercise of personal jurisdiction, Tekmart need only present "a *prima facie* case for personal jurisdiction."  *Coastal Power*, 517 F.3d at 241; *see also Irving v. Owens-Corning Fiberglas Corp.*, 864 F.2d 383, 384 (5th Cir. 1989).

When considering whether it has personal jurisdiction over a defendant, the Court may consider any discovery materials submitted by the parties, such as affidavits or declarations.  *See Coastal Power*, 517 F.3d at 241.  But when, as here, the Court has not held a "full and fair hearing, it [does] not act as a fact finder and must construe all disputed facts in the plaintiff's favor and consider them along with the undisputed facts."  *Id.*; *see also Ritter*, 768 F.3d at 431 ("We must accept the plaintiff's uncontroverted allegations, and resolve in [its] favor all conflicts between the facts contained in the parties' affidavits and other documentation." (quoting *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002))).

### B. Analysis

Federal personal jurisdiction "is governed by the law of the state in which the federal court sits."  *Bulkley*, 1 F.4th at 351.  "In Texas, courts evaluate personal jurisdiction over nonresident defendants through a two-step inquiry, ensuring compliance with the state's long-

arm statute and the Due Process Clause of the Fourteenth Amendment." *Id.* "[T]he Texas long-arm statute extends to the limits of federal due process," so the two-step inquiry "collapses into one federal due process analysis." *Id.* (quoting *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008)).

A separate two-step guides the Court's analysis of whether it can exercise personal jurisdiction over a defendant consistent with the Due Process Clause. First, "the plaintiff must show that the nonresident defendant purposefully availed itself of the benefits and protections of the forum state by establishing minimum contacts with the forum state." *Ritter*, 768 F.3d at 431 (cleaned up). "The 'purposeful availment' requirement protects defendants from being summoned to a forum where they have only 'random, fortuitous, or attenuated contacts'" and would not otherwise expect to be haled into court there. *Sayers Constr., LLC v. Timberline Constr., Inc.*, 976 F.3d 570, 573 (5th Cir. 2020) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Second, if the court concludes that the defendant established minimum contacts with the forum state, the defendant attempting to defeat personal jurisdiction must show that the court's exercise of personal jurisdiction would not "comport with 'fair play and substantial justice.'" *See Burger King*, 471 U.S. at 476–77 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)); *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1068 (5th Cir. 1992).

There are two kinds of personal jurisdiction: general jurisdiction and specific jurisdiction. *E.g.*, *Ford Motor Co. v. Mont. 8th Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021). General jurisdiction requires the defendant to be "'essentially at home' in the State." *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Paradigmatically, a corporation is at home in at least two places: where it's incorporated and

where it has its principal place of business. *Id.* Courts in those jurisdictions—the place of incorporation and the principal place of business—can exercise general personal jurisdiction over the defendant, no matter the jurisdiction's connection to the claim involved. *Id.*

Specific jurisdiction is narrower, and the test for whether it exists is more complex. *Jones*, 954 F.2d at 1068. "Specific jurisdiction 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Ritter*, 768 F.3d at 432–33 (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)). "[T]o exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden*, 571 U.S. at 284; *see also Sayers Constr.*, 976 F.3d at 573.

### 1. *General Jurisdiction*

Tekmart alleges—and Power-Sonic does not contest—that Power-Sonic is incorporated in Nevada and has its principal place of business in San Diego, California.[18] Because Power-Sonic is not incorporated in Texas and does not have its principal place of business in Texas, and because Tekmart has not otherwise made a prima facie case that Power-Sonic is essentially at home in Texas, the Court does not have general jurisdiction over Power-Sonic. *See Ford*, 141 S. Ct. at 1024; *Ritter*, 768 F.3d at 432 ("It is . . . incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business.").

### 2. *Specific Jurisdiction*

Without general jurisdiction, Tekmart must make a prima facie showing that the Court has specific jurisdiction over Power-Sonic. Specific jurisdiction is analyzed on a claim-by-claim basis. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274–75 (5th Cir. 2006). When

---

[18] *Compare* Compl. ¶ 2, *with* Mot. at 3–4.

considering whether there is specific jurisdiction, courts in the Fifth Circuit use a three-step analysis, which asks:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there;
>
> (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and
>
> (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Liberstat v. Sundance Energy, Inc.*, 978 F.3d 315, 318–19 (5th Cir. 2020) (cleaned up).  "It's the plaintiff's burden to establish the first two prongs," while the defendant bears the burden on the third.  *See, e.g.*, *Seville v. Maersk Line, Ltd.*, 53 F.4th 890, 895 (5th Cir. 2022).

Steps one and two of the analysis get at whether the defendant's suit-related conduct created a substantial connection with the forum state.  The test for determining whether a defendant's suit-related conduct created a substantial connection with the forum state differs depending on the type of claim the plaintiff brings (such as contract, intentional tort, etc.).  *See, e.g.*, *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 489–90 (5th Cir. 2018).  In a breach of contract case, like this one, courts look at the parties' "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Sayers Constr.*, 976 F.3d at 573 (quoting *Burger King*, 471 U.S. at 479).  "A touchstone of this analysis is the place of contractual performance."  *Id.* (quotation omitted).

Tekmart brings one claim—its breach of contract claim—against Power-Sonic.  Tekmart does not allege, and does not argue, that the parties' contract called for performance in Texas.[19]  Recall that, under the contract, Power-Sonic agreed to purchase custom injection plastic parts

---

[19] *See generally* Compl.; Resp.

from Tekmart.  Presumably, Tekmart planned to manufacture the goods in either Ciudad Juárez or Tijuana, México—the only two facilities Tekmart discloses in its Complaint.[20]  And there's no indication in the Complaint that Power-Sonic's obligations under the contract have any connection to Texas.  For example, Tekmart does not allege that Power-Sonic's payments would originate in Texas, be processed by Power-Sonic employees in Texas, or the like.  In any event, even if Tekmart had alleged these facts, they probably would not suffice to establish minimum contacts.  *See Jones*, 954 F.2d at 1068–69 (rejecting that similar facts established minimum contacts).

Tekmart nevertheless asserts that several Texas-related facts support the Court's exercise of specific jurisdiction over Power-Sonic:

(1) the parties held two in-person meetings in Texas which "culminated in the formation" of the contract;[21]

(2) the parties also held a third in-person meeting in Texas during which the parties discussed Power-Sonic's alleged breach;[22]

(3) the parties further held three videoconferences, that Mr. Myers attended,[23] during which Power-Sonic allegedly communicated its intent to breach the contract and during which the parties discussed Power-Sonic's alleged breach;[24]

---

[20] Compl. ¶ 6.

[21] Resp. at 5–6; Compl. ¶¶ 8–10.

[22] Resp. at 5; Compl. ¶ 11.  There is a discrepancy between Tekmart's assertions in its Response and its allegations in its Complaint.  In its Response, Tekmart asserts that three in-person meetings in Texas culminated in the formation of the contract, including a meeting that supposedly took place on August 4, 2022.  Resp. at 5.  In its Complaint, Tekmart alleges that the August 4 meeting occurred after the formation of the contract and that the parties discussed payment delinquency during that meeting. Compl. ¶ 11.

[23] Recall that Mr. Myers is Tekmart's Financial Controller.  Myers Unsworn Decl. ¶ 2.

[24] Resp. at 5–6; Compl. ¶ 12.

(4) Mr. Myers lives in Texas;[25]

(5) Power-Sonic allegedly made payments, and was supposed to make payments, through Mr. Myers, such that the contract "was partially performable in Texas."[26]

That the parties' contract negotiations allegedly took place in Texas weighs on Tekmart's side of the scale—that is, it is a factor that supports the Court's possible exercise of specific jurisdiction over Power-Sonic.[27] *See, e.g.*, *Danziger & De Llano, LLP v. Morgan Verkamp, LLC*, 24 F.4th 491, 500 (5th Cir. 2022) (explaining that relevant facts "include[e] prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing"). But the fact that the parties negotiated their contract in Texas does not alone establish specific jurisdiction. *See Trois*, 882 F.3d at 489. When a defendant (like Power-Sonic) has no other contacts with Texas, besides, as the Court will explain, "random, fortuitous, or attenuated contacts," the Court cannot exercise personal jurisdiction over the nonresident defendant.[28]

It's true, as Tekmart points out, that in *Central Freight Lines Inc. v. APA Transport Corp.* the defendant's participation in contract negotiations in Texas supported the court's exercise of specific jurisdiction. 322 F.3d 376, 382–83 (5th Cir. 2003). Power-Sonic also participated in negotiations in Texas that led to the formation of the parties' contract. But in every other way,

---

[25] Resp. at 5; Compl. ¶ 12.

[26] Resp. at 5.

[27] Power-Sonic vigorously disputes that the in-person negotiations that took place in Texas before the parties' formation of the contract were about the contract at issue in this lawsuit. But at this stage in the litigation, the Court resolves all factual disputes in favor of Tekmart. *Coastal Power*, 517 F.3d at 241. Thus, for this Opinion, the Court assumes the contract negotiations that took place in Texas related to the contract underlying the parties' present dispute.

[28] The Court's conclusion here is limited to contract disputes. *See Lewis v. Fresne*, 252 F.3d 352, 358–59 (5th Cir. 2001).

*Central Freight* is unlike this case. That's because the defendant in *Central Freight* negotiated with a *Texas* corporation (the plaintiff) for a "long-standing contractual relationship" under which the defendant would pick up freight "from Texas for Texas customers." *Id.* at 382. Tekmart is not a Texas corporation, Power-Sonic has no obligations under the contract that connect it to Texas, and Tekmart alleges nothing about a long-standing relationship under the contract. *Central Freight* thus does little for Tekmart.

Likewise, *Nuovo Pignone, SpA v. STORMAN ASIA M/V*[29]—the other case Tekmart relies on—does not support this Court's exercise of specific jurisdiction over Power-Sonic. Unlike here, the contract at issue in *Nuovo Pignone* specifically called for performance in forum state (Louisiana), which the Fifth Circuit concluded established specific jurisdiction. *Nuovo Pignone*, 310 F.3d at 379–80. Again, Tekmart and Power-Sonic's contract does not call for performance in Texas.

Tekmart counters that its Finance Controller, Mr. Myers—the person responsible for the Company's finances, including payments from Power-Sonic—resides in Texas, which means the contract was partially performable in Texas, so the argument goes. Resp. at 5. As an initial matter, the fact that Mr. Myers's resides in Texas does not support the exercise of specific jurisdiction. The personal jurisdiction analysis is defendant-focused. *Ritter*, 768 F.3d at 433.[30] Plaintiff's contacts cannot "be used to demonstrate contacts by the defendant." *Id.*

---

[29] 310 F.3d 374 (5th Cir. 2002), *abrogated on other grounds Water Splash, Inc. v. Menon*, 581 U.S. 271 (2017).

[30] *See also Walden*, 571 U.S. at 284 (explaining that *the defendant* must have minimum contacts with the forum state, and that the Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State").

Even so, the fact that Mr. Myers (who is not a plaintiff, and who was not personally being paid by Power-Sonic) had authority over the Tekmart's finances, including in relation to its contract with Power-Sonic, is insufficient to establish specific jurisdiction. *See Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986) ("mail[ing] payments to Texas," among other facts, does not support specific jurisdiction). An example will help illustrate this conclusion. In *Ritter*, the plaintiff alleged, among other things, that the defendant "sent the account contract to [plaintiff] in Texas," that payments were routed through "bank accounts in Texas," and that defendant "communicated with [plaintiff] over the telephone." *Ritter*, 768 F.3d at 433. These contacts did not satisfy the minimum contacts test so the Fifth Court held the court lacked specific jurisdiction. *Ritter*, 768 F.3d at 433.[31] The same is true here.

Once Power-Sonic became delinquent on payments, the parties held several meetings in hopes they could resolve their issues without litigation. Those meetings took place over videoconference, with Mr. Myers (who, again, lives in Texas) participating.[32] Mr. Myers also communicated with Power-Sonic representatives over email about the Company's alleged breach.[33] Those communications directed at Texas, Tekmart says, gives the Court personal jurisdiction over Power-Sonic. Not so.[34] Courts have consistently held that telephone or videoconference meetings directed at the forum state regarding a contract's formation or

---

[31] *See also Sayers Constr.*, 976 F.3d at 574 (explaining that the Fifth Circuit has held that "mailing payments to the forum state, engaging in communications related to the execution and performance of the contract, and the existence of a contract between the nonresident defendant and the resident of the forum are insufficient to establish minimum contacts" (cleaned up and quoting *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004))).

[32] Myers Unsworn Decl. ¶ 2.

[33] E-Mail Communications at 4–16.

[34] The communications are, however, relevant to the analysis. *Danziger*, 24 F.4th at 500.

performance are insufficient to establish specific jurisdiction.[35]  *Danziger*, 24 F.4th at 500 ("An exchange of communications in the course of developing and carrying out a contract also does not, by itself, constitute the required purposeful availment of the benefits and protections of Texas law." (quoting *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007))).[36]

In sum, Power-Sonic's only suit-related contacts with Texas are two in-person meetings during which the parties negotiated the contract, several meetings (one in person, others over videoconference) during which the parties discussed Power-Sonic's alleged breach, and (fortuitously) Tekmart's Finance Controller's residence and place-of-work.  Taken together, Power-Sonic does not have minimum contacts with Texas.  *Cf. Ritter*, 768 F.3d at 433 ("[A] defendant does not have minimum contacts with a state when it does not have a physical presence in the state; it did not conduct business in the state; and the contract underlying the business transaction at issue in the lawsuit was not signed in the state and did not call for performance in the state." (citing *Seiferth*, 472 F.3d at 272)).  The Court therefore lacks specific personal jurisdiction over Power-Sonic.

---

[35] This Court emphasizes that it is not addressing whether Power-Sonic's communications directed at Texas would establish personal jurisdiction if this were not a contract case and were instead, say, an intentional tort case.  *See Lewis*, 252 F.3d at 358–59 (suggesting that a court may give a nonresident defendant's communications directed at the forum state different weight in the minimum contacts analysis depending on the type of case).

[36] *See also, e.g.*, *Trois*, 882 F.3d at 489; *Brother of the Leaf, LLC v. Plastic Prods. Co., Inc.*, SA-14-CV-479-XR, 2014 WL 3824209, at *2–3 (W.D. Tex. Aug. 1, 2014) (holding that telephone or videoconference meetings "pertaining to the negotiation and performance" of the parties' contract was insufficient to establish specific jurisdiction); *N5ZX Aviation, Inc. v. Bell*, No. A-10-CA-817-SS, 2011 WL 13237590, at *5 (W.D. Tex. June 29, 2011) ("[T]elephone, facsimile, and letter communications between Tennessee and Texas in the negotiation or development of the contract do not constitute sufficient minimum contacts to satisfy personal jurisdiction over defendants." (citing *Hydrokinetics, Inc. v. Alaska Mech., Inc.*, 700 F.2d 1026, 1029 (5th Cir. 1983)).

C.  **Jurisdictional Discovery**

Tekmart asks for jurisdictional discovery on both specific and general jurisdiction issues. Resp. at 7.  Power-Sonic argues that jurisdictional discovery would be merely a fishing expedition, which its says the Court should not permit.  Mot. at 7; Reply at 5–6.

To obtain jurisdictional discovery, the plaintiff must make at least "a preliminary showing of jurisdiction."  *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005) (citing *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003)); *Next Techs., Inc. v. ThermoGenisis, LLC*, 121 F. Supp. 3d 671, 676 (W.D. Tex. 2015).  To make a preliminary showing, the plaintiff must allege facts "that suggest with reasonable particularity the possible existence of requisite contacts."  *Next Techs.*, 121 F. Supp. 3d at 676 (quotation omitted); *see also Ritter*, 768 F.3d at 434 ("A plaintiff is not entitled to jurisdictional discovery when 'the record shows that the requested discovery is not likely to produce the facts needed to withstand a Ruble 12(b)([2]) motion.'" (quoting *Freeman v. United States*, 556 F.3d 326, 342 (5th Cir. 2009))).  To show that discovery would be fruitful, ideally the plaintiff would state the "facts [it] hoped to obtain" from discovery and how they would support personal jurisdiction. *See Kelly v. Syria Shell Petrol. Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000).  In any event, "[w]hen the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted."  *Wyatt v. Kaplan*, 686 F.2d 276, 284 (5th Cir. 1982).

Tekmart points to Power-Sonic's website which says Power-Sonic "employ[s] over 1,000 people worldwide with [its] corporate headquarters in the USA [and] with major operations in UK, France, Mexico, and The Netherlands."[37]  To Tekmart, this statement suggests that Power-Sonic may have contacts that are so continuous and systematic as to render it essentially at home

---

[37] Resp. at 7; Screenshot Power-Sonic "About Us" Webpage at 3.

in Texas. Resp. at 7. Power-Sonic cites Tekmart's Complaint, emphasizing that Power-Sonic is a Nevada corporation with its principal place of business in California.[38] And, again, besides those minor Texas contacts the Court has already discussed, Tekmart alleges no other facts that tend to show Power-Sonic has continuous and systematic contacts with Texas.

Tekmart has not stated with reasonable particularity the possible existence of facts that would support general jurisdiction. Power-Sonic's website does not remotely suggest it may be essentially at home in Texas. Even Ford Motor Company, which is incorporated in Delaware and headquartered in Michigan, but "markets, sells, and services its products across the United States and overseas," is not subject to general jurisdiction outside of Delaware and Michigan. *See Ford*, 141 S. Ct. at 1022, 1024. More than Power-Sonic's own statement about its global footprint is required to show that discovery related to general jurisdiction is warranted. Tekmart offers nothing more with respect to general jurisdiction and so the Court will not permit discovery. *Cf. Evergreen Media Holdings, LLC v. Safran Co.*, 68 F. Supp. 3d 664, 685 (S.D. Tex. 2014) (denying jurisdictional discovery where plaintiff made only "vague, conclusory assertions that d[id] not indicate the extent or frequency of contacts" with the forum state).

The same goes for specific jurisdiction. Besides referencing Power-Sonic's minor Texas contacts that the Court has already addressed, Tekmart says nothing about what facts it hopes to uncover that would support specific jurisdiction. *See* Resp. at 6–7. The Court has already concluded that Tekmart failed to make a prima facie case for specific jurisdiction, and the Court now holds that, for the reasons already discussed, Tekmart has also failed to make a preliminary showing of specific jurisdiction. *See supra* Section II.B.2. Without more, the Court will not permit jurisdictional discovery. *Cf. Head v. Las Vegas Sands, LLC*, 298 F. Supp. 3d 963, 967

---

[38] Mot. at 3–4; Reply at 5–6; *see also* Compl. ¶ 2.

(S.D. Tex. 2018) (denying jurisdictional discovery when the plaintiffs failed to make a preliminary showing of jurisdiction and where "their requests for jurisdictional discovery contained no rationale or accompanying explanation as to what facts are likely to be discovered which would meaningfully support personal jurisdiction").

### III. CONCLUSION

For the reasons discussed, Power-Sonic cannot have reasonably anticipated being sued in Texas based on its fortuitous and attenuated contacts with Texas in relation to its contract with Tekmart. *Burger King*, 471 U.S. at 475. Exercising personal jurisdiction over Power-Sonic would therefore violate its rights under the Due Process Clause.

The Court **GRANTS** Defendant The Power-Sonic Corporation's "Motion to Dismiss Plaintiff's Complaint" (ECF No. 6). Accordingly, the Court **DISMISSES** Plaintiff Tekmart Integrated Manufacturing Services, Ltd.'s claim against Defendant The Power-Sonic Corporation **WITHOUT PREJUDICE**. The Court will separately issue a final judgment.

The Court **CLOSES** this case.

**So ORDERED and SIGNED this 30th day of June 2023.**

_____
DAVID C. GUADERRAMA
UNITED STATES DISTRICT JUDGE